UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for The Royal Palm Bank of Florida,

Plaintiff,

v. Case No: 2:14-cv-232-FtM-29CM

MARIA GABY SOLIZ, PIERRE FREGEAU, BRUCE CARR, TIME OFF, LLC, WASHINGTON MUTUAL BANK, and THE VILLAGES AT EMERALD LAKES TWO, a condominium association,

Defendants.

---

**OPINION AND ORDER**

This matter comes before the Court on the plaintiff's Motion for Summary Judgment and Final Default Judgment (Doc. #13) filed on September 2, 2014. Defendant JP Morgan Chase Bank, the only defendant to appear in this matter, has not filed a response, and the time to do so has expired.

**I.**

On November 19, 2003, Pierre Fregeau (Fregeau) and Maria Gaby Soliz (Soliz) acquired real property located at 7785 Esmeralda Way, Naples, Florida (the "Property"), more particularly described as:

> Unit M-201, The Villages at Emerald Lakes Two, a Condominium, according to the declaration of Condominium thereof, recorded in Official Record Book 1641, Page 1036, and as amended, of the Public Records of Collier County, Florida, together with an undivided share in the common elements appurtenant thereto.

The deed was recorded in the public records of Collier County on November 25, 2003.

On December 12, 2003, Fregeau and Soliz executed and delivered a mortgage securing a debt in the amount of $120,000 to Coastal Capital Corp. (the “Coastal Capital Mortgage”). The Coastal Capital Mortgage was recorded on December 29, 2003. On November 5, 2004, Time Off, LLC (Time Off), Fregeau, and Soliz obtained a revolving line of credit, not to exceed the principal sum of $250,000, from the Royal Palm Bank of Florida (Royal Palm). The line of credit was secured by a mortgage recorded on January 14, 2005 (the “Royal Palm Mortgage”).

Fregeau and Soliz executed and delivered another mortgage securing a loan in the amount of $100,000 to the Sven A. Wasberg Trust on November 9, 2005 (the “Wasberg Mortgage”). The Wasberg Mortgage was recorded on November 23, 2005. On October 3, 2006, Washington Mutual Bank, FA (WaMu) granted a loan to Fregeau and Soliz in the original principal amount of $232,500. The loan was secured by a mortgage recorded on October 18, 2006 (the “WaMu Mortgage”). Proceeds from the loan secured by the WaMu Mortgage were used to pay-off and satisfy the Coastal Capital Mortgage and

the Wasberg Mortgage. A Satisfaction of the Wasberg Mortgage was recorded on November 14, 2006, and a Release of the Coastal Capital Mortage was recorded on December 4, 2006.

WaMu was closed by the Office of Thrift Supervision on September 25, 2008, and the Federal Deposit Insurance Corporation (FDIC) was named receiver. After the closure, JP Morgan Chase Bank (JP Morgan) acquired certain assets of WaMu, including all loans and loan commitments of WaMu, pursuant to a Purchase and Assumption Agreement with the FDIC. On October 29, 2008, JP Morgan filed an action to foreclose on the WaMu Mortgage in the Circuit Court in and for Collier County (the “State Court”). The Property was purchased at a judicial sale by JP Morgan, and a Certificate of Title reflecting JP Morgan as the owner of the Property was recorded on November 6, 2009.

On March 13, 2009, Royal Palm filed a complaint in the Circuit Court in and for Collier County, seeking to foreclose on the Royal Palm Mortgage. The State Court entered a Final Summary Judgment of Foreclosure in favor of Royal Palm on January 11, 2010, and foreclosed on any and all interests claimed by Fregeau, Soliz, Time Off, Bruce Carr (Carr), the managing member of Time Off, LLC, the Villages at Emerald Lakes Two, and WaMu. The Collier County Clerk of Court sold the Property to Royal Palm at a public auction

on February 10, 2010. Royal Palm then sold the Property to John and Mary Jane Bucci, via special warranty deed.

On August 12, 2010, JP Morgan filed a petition to intervene and a motion to set aside sale and judgment of foreclosure. JP Morgan alleged that it was the successor to the interest of WaMu and did not receive notice of the forfeiture proceeding initiated by Royal Palm. JP Morgan argued that the Royal Palm Foreclosure Judgment did not apply to JP Morgan because service on WaMu did not constitute service on JP Morgan, and requested that the State Court set aside the Royal Palm Foreclosure Judgment and the Royal Palm Certificate of Title.

The State Court denied JP Morgan's motion to set aside the sale and judgment and ordered Royal Palm to file a reforeclosure complaint. Royal Palm complied with the State Court's Order and filed a Verified Supplemental Complaint to Reforeclose on May 16, 2011. JP Morgan filed an Answer and Counterclaims alleging claims for equitable subrogation, an equitable lien, and unjust enrichment.

On November 17, 2011, JP Morgan filed a Motion for Partial Summary Judgment as to Lien Priority on Counterclaim, arguing that its interest in the Property was superior to Royal Palm's interest to extent the proceeds from the WaMu loan were used to satisfy the Coastal Capital loan. The State Court denied JP Morgan's motion

on April 24, 2012, and determined that Royal Palm had a senior interest in the Property.

Royal Palm was closed by the Florida Office of Financial Regulation on July 20, 2012, and the FDIC was named receiver. On August 6, 2012, the FDIC served JP Morgan with a "Notice to Creditor to Present Proof of Claim" which notified JP Morgan that any claims against Royal Palm must be filed with the FDIC on or before October 24, 2012 (the "Claims Bar Date"). JP Morgan did not file a claim with the FDIC regarding the Property.

The FDIC filed a Notice of Substitution of Parties on April 3, 2014, and removed the action to this Court on April 25, 2014. The FDIC now moves for summary judgment against JP Morgan, the only defendant to appear in this matter, and entry of a final default judgment against Soliz, Fregeau, Time Off, Carr, WaMu, and the Villages at Emerald Lakes Two.

**II.**

The FDIC argues that it is entitled to summary judgment on its claim for reforeclosure because the State Court has already determined that the Royal Palm Mortgage has priority over the WaMu Mortgage. The FDIC also argues that the Court lacks subject matter jurisdiction of JP Morgan's affirmative defenses and counterclaims because JP Morgan failed to file a timely claim with the FDIC.

**A.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp.

Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

**B.**

The FDIC argues that it is entitled to foreclose on JP Morgan's interests in the Property because the Royal Palm Mortgage is superior to all of JP Morgan's recorded interests. In Florida, a senior mortgagee's rights are unaffected by the foreclosure of a junior mortgage. Garcia v. Stewart, 906 So. 2d 1117, 1121 (Fla. 4th DCA 2005). Thus, the FDIC may only foreclose on JP Morgan's interests in the Property if it establishes that the Royal Palm Mortgage is superior to all of JP Morgan's recorded interests in the Property.

The priority of competing interests in land is generally based on the order in which the interests are created. See Morris v. Osteen, 948 So. 2d 821, 826 (Fla. 5th DCA 2007). "The important caveat to this rule is that those acquiring rights later will have

priority if they took without 'notice of the first created rights.'" Id. (quoting F.J. Holmes Equip., Inc. v. Babcock Bldg. Supply, Inc., 553 So. 2d 748, 750 (Fla. 5th DCA 1989)). In order for a conveyance, transfer, or mortgage of real property, or of any interest therein, to be good and effectual against creditors or subsequent purchasers, it must be recorded in a county's "Official Records." Fla. Stat. § 695.01. See also U.S. Bank Nat'l Ass'n v. Farhood, 153 So. 3d 955, 958 (Fla. 1st DCA 2014). The sequence of official register numbers "shall determine the priority of recordation. An instrument bearing the lower number in the then-current series of numbers shall have priority over any instrument bearing a higher number in the same series." Fla. Stat. § 695.11.

Here, the undisputed evidence clearly establishes that the Royal Palm Mortgage has priority over the WaMu Mortgage. The Royal Palm Mortgage was recorded in Official Records Book 3715, Page 3099, Public Record of Collier County, Florida, on January 14, 2005. (Doc. #2, p. 5.) The WaMu Mortgage was recorded on October 18, 2006, in Official Records Book 4124, Page 434, Public Record of Collier County, Florida. (Doc. #2, p. 19.) Likewise, the Certificate of Title identifying JP Morgan as the owner of the Property was recorded in Official Records Book 4507, Page 1592, Public Record of Collier County, Florida on November 6, 2009.

(Doc. #3, p. 132.) Because the Royal Palm Mortgage bears the lowest official recording number, the Court finds that it is superior to all interests of JP Morgan.

Although JP Morgan's interests in the Property are inferior to the Royal Palm Mortgage, they were not fully foreclosed by the State Court's Final Summary Judgment of Foreclosure. See Quinn Plumbing Co. v. New Miami Shores Corp., 129 So. 690, 692 (1930) (when a junior mortgagee is omitted as a party to the foreclosure of a senior mortgage, the lien of the junior mortgagee is unaffected by the judgment). Florida law provides that a senior mortgagee may remedy the inadvertent omission of a junior mortgagee by reforeclosing on the property. Abdoney v. York, 903 So. 2d 981, 984 (Fla. 2d DCA 2005). Because the FDIC's interest in the Property is superior to the interests of JP Morgan, the Court finds that reforeclosure is warranted.

**C.**

The FDIC argues that it is entitled to summary judgment on JP Morgan's affirmative defenses and counterclaims because they are barred by the Financial Institution Reform, Recovery, and Enforcement Act. The Court agrees.

The Financial Institution Reform, Recovery, and Enforcement Act (FIRREA) established a comprehensive claims review process for claims against the assets of failed financial institutions held by

the FDIC as Receiver. This claims review process "enables the FDIC [ ] to dispose of the bulk of claims against failed financial institutions expeditiously and fairly . . . without unduly burdening the District Courts." Damiano v. FDIC, 104 F.3d 328, 334 n.10 (11th Cir. 1997) (quoting H.R. Rep. No. 101-54(I), at 418-19 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 215); FDIC v. LaCentra Trucking, Inc., 157 F.3d 1292, 1299 (11th Cir. 1998) (same). To oversimplify, FIRREA requires the FDIC to give notice to the failed bank's creditors to file claims against the bank, 12 U.S.C. § 1821(d)(3)(b), and authorizes the FDIC to receive and then disallow or allow and pay such claims, 12 U.S.C. § 1821(d)(5), (10).

For claims handled administratively, the FDIC is required to determine the claims in accordance with the statutory and regulatory requirements of the claims review process. 12 U.S.C. § 1821(d)(3)(A). Under this review process, the FDIC must first publish a notice "to the depository institution's creditors" to present their claims by a specified date not less than 90 days after publication of the notice, 12 U.S.C. § 1821(d)(3)(B)(i), and must republish the notice twice at monthly intervals, 12 U.S.C. § 1821(d)(3)(B)(ii). The FDIC must also mail a similar notice to "any creditor shown on the institution's books" at the creditor's last address listed in the books, 12 U.S.C. § 1821(d)(3)(C)(i),

and “upon discovery of the name and address of a claimant not appearing on the institution’s books within 30 days after the discovery of such name and address,” 12 U.S.C. § 1821(d)(3)(C)(ii).

Unless extended by a written agreement, the FDIC has 180 days after a claim is filed to allow or disallow it and notify the claimant of the determination. 12 U.S.C. § 1821(d)(5)(A)(i), (ii). A person whose claim is disallowed, or whose claim is not decided within the 180 day period, may pursue administrative remedies or file a civil action in an appropriate federal district court. 12 U.S.C. § 1821(d)(6)(A). Claims not timely filed “shall be disallowed, and such disallowance shall be final”, 12 U.S.C. § 1821(d)(5)(C)(i), unless “the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date” and “such claim is filed in time to permit payment of such claim,” 12 U.S.C. § 1821(d)(5)(C)(ii).

Except as provided in the statute, “no court shall have jurisdiction over -- (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver . . . or (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.” 12 U.S.C. § 1821(d)(13)(D)(i), (ii). This broad bar applies to claims and actions by debtors, creditors, and others, Tri-State Hotels, Inc.

v. FDIC, 79 F.3d 707, 713-15 (8th Cir. 1996), as well as lienors, LaCentra Trucking, 157 F.3d at 1299 n.6, which may be characterized as "(1) claims for payment from assets of any depository institution for which the [FDIC] has been appointed Receiver; (2) actions for payment from assets of such depository institutions; (3) actions seeking a determination of rights with respect to the assets of such depository institutions; and (4) a claim relating to any act or omission of such institution or the [FDIC] as receiver." Am. First Fed., Inc. v. Lake Forest Park, Inc., 198 F.3d 1259, 1263 (11th Cir. 1999) (quoting Nat'l Union Fire Ins. Co. v. City Sav., F.S.B., 28 F.3d 376, 393 (3d Cir. 1994)). Thus, "[u]nder FIRREA, federal courts generally lack the authority to decide claims against an institution in federal receivership until the claimant has exhausted his administrative remedies against the FDIC." Aguilar v. FDIC, 63 F.3d 1059, 1061 (11th Cir. 1995) (citation omitted).

The question before the Court is whether § 1821(d)(13)(D) applies to and bars JP Morgan's affirmative defenses and counterclaims. JP Morgan has asserted four affirmative defenses: (i) the Royal Palm Mortgage should be equitably subrogated to the interest of the Coastal Capital Mortgage; (ii) JP Morgan is entitled to a first priority equitable lien on the Property; (iii) Royal Palm's interest in the Property is inferior to JP Morgan's

interests; and (iv) if the Property is sold at a foreclosure sale, then JP Morgan is entitled to surplus proceeds. JP Morgan has also asserted three counterclaims. In Counterclaim I, JP Morgan asserts a claim for equitable subrogation based on the same grounds set forth in its first affirmative defense. Counterclaim II asserts a claim for an equitable lien on grounds similar to those set forth in JP Morgan's second affirmative defense. Counterclaim III sets forth a claim for unjust enrichment.

It is clear that JP Morgan's affirmative defenses and counterclaims fall within the scope of 12 U.S.C. § 1821(d)(13)(D) because they seek payment from (i.e., the unjust enrichment claim), and a determination of rights (i.e., the equitable subrogation, equitable lien, and lien priority claims and defenses) with respect to, the assets of a depository institution for which the FDIC has been appointed receiver. It is also clear that JP Morgan failed to file an administrative claim with the FDIC after receiving notice of Royal Palm's failure and the Claims Bar Date. (Doc. #14, pp. 2-3.) Because JP Morgan has not exhausted its administrative remedies against the FDIC, the Court lacks subject matter jurisdiction over JP Morgan's affirmative defenses and counterclaims. The FDIC is therefore entitled to summary judgment on JP Morgan's affirmative defenses and counterclaims.

**III.**

The FDIC also seeks a default judgment against Soliz, Fregeau, Time Off, Carr, WaMu, and the Villages at Emerald Lakes Two. Before the court may enter a final default judgment, the clerk must enter a default when the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After a default is entered against a defendant, he is deemed to have admitted the plaintiff's well-pleaded factual allegations, and on appeal, he is barred from contesting those facts. Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009). "A default judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations. [ ] A default defendant may, on appeal, challenge the sufficiency of the complaint, even if he may not challenge the sufficiency of the proof." Id. (internal quotations and citations omitted).

On September 2, 2014, the FDIC filed a Motion for Default against Soliz, Fregeau, Time Off, Carr, WaMu, and the Villages at Emerald Lakes Two. (Doc. #10.) The Magistrate Judge denied the FDIC's motion because:

> a valid state court judgment of foreclosure has been entered against the Defendants now sought to be defaulted by Plaintiff, and the state court expressly stated that the judgment and subsequent sale were not

> disturbed by that court permitting JP Morgan to intervene, it does not appear that a second default is required; or, at least, it is unclear upon what grounds this Court can enter such default. The Court therefore will deny the Motion for Default without prejudice to Plaintiff refiling the motion explaining the basis upon which the Court may enter a second default, if such grounds exist.

(Doc. #19, p. 4.) Because the State Court's Final Summary Judgment of Foreclosure was not disturbed by JP Morgan's intervention or the removal of this action, the Court finds that the entry of a final default judgment against Soliz, Fregeau, Time Off, Carr, WaMu, and the Villages at Emerald Lakes Two is not required.

Accordingly, it is now

**ORDERED:**

1. The Federal Deposit Insurance Corporation's Motion for Summary Judgment (Doc. #13) is **GRANTED** as to the Federal Deposit Insurance Corporation's Verified Supplemental Complaint to Reforeclose and JP Morgan Chase Bank's Counterclaims. Judgment shall issue in favor of the Federal Deposit Insurance Corporation and against JP Morgan Chase Bank as provided herein.

2. The Federal Deposit Insurance Corporation's Motion for Final Default Judgment (Doc. #13) is **GRANTED** to the extent that the entry of a final default judgment against Soliz, Fregeau, Time Off, Carr, WaMu, and the Villages at Emerald Lakes Two is not required.

3. The Royal Palm Mortgage's lien on the Property is superior to any and all interests claimed by JP Morgan Chase Bank and any person claiming, by through, under or against JP Morgan Chase Bank. The special warranty deed from the Royal Palm Bank of Florida to John and Mary Jane Bucci is valid and JP Morgan is forever barred and foreclosed of all interests in the Property that arose prior to the recordation of John and Mary Jane Bucci's special warranty deed. This Opinion and Order does not change or otherwise alter the Final Summary Judgment of Foreclosure entered in the Circuit Court in and for Collier County.

4. The Clerk shall enter judgment accordingly.

5. The Federal Deposit Insurance Corporation shall submit, via email, a Final Judgment of Foreclosure to the Court within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this 13th day of March, 2015.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of record